## In re HERALD–POST, Inc.

### No. 11982.

District Court, W. D. Kentucky, Louisville Division.

Nov. 27, 1937.

Edward P. Humphrey, of Louisville, Ky., for bankrupt.

D. A. Sachs, Jr., of Louisville, Ky., for receiver and trustee.

HAMILTON, District Judge.

This action is pending before me on petition of Edward P. Humphrey, attorney for the bankrupt for an allowance of a fee of $1,500; and D. A. Sachs, attorney for trustee, for an allowance of an attorney's fee of $3,000.

The gross estate coming into the hands of the trustee is $130,375.49; lien claims aggregate $103,809.68, leaving a balance for the payment of expenses of administration and distribution to unsecured creditors of $26,565.81. The fees asked approximate 17 per cent. of the distributable estate.

The elements to be considered in determining attorneys' fees are as follows:

(1) The time which has fairly and properly been used in dealing with the case,

232

because this represents the amount of necessary work; (2) the difficulties facing the attorney and the skill required in meeting them; (3) the knowledge and skill in fact employed in solving the legal difficulties; (4) the amount involved, as that determines the risk to the client and the comparative responsibility of the attorney; (5) the results accomplished, as that determines the benefit realized by the client; (6) the legal ability, professional standing, and demand for services of the attorney, because, if his standing is high and he has a large clientele, he will likely be required to decline employment from other clients while attending to the matter in hand.

Taking up the claim of Edward P. Humphrey, attorney for the bankrupt, his application shows that for several weeks prior to 'October 30, 1936, the date the bankrupt's petition was filed, he conferred with the bankrupt many times for the purpose of developing probable plans for the continued operation of the business. Finally, it was decided that the only legitimate thing for the corporation to do was to liquidate its affairs in bankruptcy, and, pursuant to this conclusion, he prepared a resolution of its board of directors, authorizing the filing of the bankruptcy petition, and filed it, and requested the appointment of a receiver; and he appeared before the judge of this court with the application for a receiver, which was acted upon favorably, and thereafter held numerous conferences with the receiver. It is further stated the attorney prepared the necessary schedules of the bankrupt and filed them with the court, all of which were of an intricate nature and consumed much time in preparation. It is further stated that he attended the first meeting of creditors before the referee and attended the examination of the officers of the bankrupt and took part therein. He also attended numerous conferences of the receiver, trustee, and their counsel, and furnished advice as to the status of the business of the bankrupt and the location and gathering of its assets. It is further alleged that counsel attended the receiving and opening of bids for the sale of the bankrupt's assets.

The application states the time used by the attorney in general terms, and the court is left largely to surmise as to the actual number of hours or days the attorney was required to give attention to the affairs of the bankrupt. The statement shows that more than ordinary skill was required to

supervise and file the bankruptcy schedules, because of the peculiar nature of the bankrupt's business. It further shows the attorney discharged his duties with fidelity and ability. The risk of loss to the bankrupt by neglect of its counsel would have been negligible. The results obtained for the bankrupt were all that could be gotten under the law. The bankrupt and its officers suffered no loss, humiliation, or embarrassment by reason of the conduct of its attorney. The high standing of bankrupt's counsel is recognized by every one who is acquainted with the bar of this court or of this state.

The general rules that I have just outlined for fixing the amount of fees do not help greatly in determining what is proper under the petition I am considering. The bankrupt's attorney is entitled only to compensation out of the estate for services which, though performed for the bankrupt, are really an aid to the estate in its administration. The Bankruptcy Act does not contemplate that the estate shall be burdened with the expense of furnishing an attorney for the bankrupt every time he appears before the referee, and, further, the attorney's compensation is limited to services rendered to the bankrupt while performing the duties devolving on him under the act. It does not include services rendered prior to the institution of the bankruptcy proceedings. The duties for which the attorney may receive compensation are those imposed by the act, and no others. Section 7 of the act, as amended (U.S.C.A. title 11, § 25) requires the bankrupt to (1) attend the first meeting of his creditors, if directed by the court or judge thereof to do so, and the hearing upon his application for a discharge, if filed; (2) comply with all lawful orders of the court; (3) examine the correctness of all proofs of claims filed against his estate; (4) execute and deliver such papers as shall be ordered by the court; (5) execute to his trustee transfers of all his property in foreign countries; (6) immediately inform his trustee of any attempt, by his creditors or other persons, to evade the provisions of the act, coming to his knowledge; (7) in case of any person having to his knowledge proved a false claim against his estate, disclose that fact immediately to his trustee; (8) prepare, make oath to, and file in triplicate a report, within ten days, unless further time is granted after the adjudication, if an invol-

untary bankrupt; and with the petition, if a voluntary bankrupt, a schedule of his property in detail, and a list of his creditors, itemized and residences given; and (9) submit himself to examination concerning the conduct of his business, the cause of his bankruptcy, his dealings with his creditors and other persons, the amount, kind, and whereabouts of his property, and, in addition, all other matters which may affect the administration and settlement of his estate.

 The bankrupt is entitled to the services of an attorney at the expense of the estate where necessary in the discharge of any of the above duties. It will be noted from the above enumeration that the statement of counsel makes claim for an allowance for services in some matters not chargeable against the estate. In fact, the things set up by counsel for which he is entitled to compensation are: Conferring with the bankrupt, preparing voluntary petition, filing schedules, petitioning for the appointment of a receiver, and attendance at hearings where the presence of the bankrupt or its officers was required.

I have concluded from consideration of all the facts, and confining the allowance strictly to matters relating to the bankruptcy proceeding, that the bankrupt's counsel should be awarded $750.

 The petition for allowance of D. A. Sachs, Jr., attorney for the receiver and trustee, shows he gave his attention to the business of his client on 107 different occasions. The time consumed is not enumerated, but, applying the experience of the judge of the court to similar matters while on the bench and engaged in the general practice of law, it would seem fair to assume that counsel spent approximately 170 hours in the service of his client, the receiver and trustee.

The applicant enjoys a high standing in his profession, and is especially qualified in bankruptcy litigation. Taking into consideration the maintenance of an office and employees to properly discharge his professional business, and assuming that the matters he was required to consider in this case lacked complexity, presented no legal difficulties, and there was no substantial recovery or reduction in claims, I believe a reasonable compensation for his services would be $1,700. The petitioner has already been paid out of the estate $500 for services rendered in the sale of the mort-

gaged property, which was charged against the preferred creditors. This makes a gross allowance of $2,200, which is reasonable.

 In the allowance of fees in bankruptcy cases, counsel and the court should bear in mind the ability of the client to pay is an element to be taken into consideration, and fees in such cases should never be as large as where the client is in no financial difficulties and the efforts of the attorney brings substantial reward. Where the attorney, through his efforts, succeeds in increasing the assets of the estate, the ability to pay increases proportionately, and the allowance in such cases should be liberal.