In the Matter of DUNNHILL SUSPENDER & BELT CORP., Bankrupt.

United States District Court
S. D. New York.
April 29, 1958.

John E. Joyce, New York City, referee in bankruptcy.

Harold P. Seligson, George Zolotar, New York City, for trustee, Bernard Jenkin.

Krause, Hirsch, Gross & Heilpern, New York City, former attorneys for trustee, George J. Hirsch, of counsel.

A. Harold Frost, New York City, for petitioning creditors.

G. George Kogut & Co., accountants for trustee.

HERLANDS, District Judge.

The attorneys and the accountants for the trustee have filed objections to the Report on Final Allowances submitted by Hon. John E. Joyce, Referee in Bankruptcy.

Harold P. Seligson, Esq. and George Zolotar, Esq., who have served up to the present as attorneys for the trustee, applied for an allowance of $7,500. The Referee allowed $4,000. The law firm of Krause, Hirsch, Gross & Heilpern, who formerly served as attorneys for the trustee from December 14, 1951 to August 4, 1953, applied for an allowance of $3,500. The Referee allowed $1,400. G. George Kogut & Co., accountants for the trustee, applied for an allowance of $4,250. The Referee allowed $3,200.

The attorneys and accountants now object to the Referee's Report for the asserted reasons (1) that the allowances are grossly inadequate and clearly erroneous and (2) that the report does not present detailed findings or reasons for the amount of compensation recommended.

The gross assets of the estate were $46,024.90. The net assets on hand are $27,934.94. If the Referee's recommendations with respect to said attorneys' and accountants' fees (totalling $8,600.) are approved, and if certain other concededly proper fees, expenses and disbursements (totalling $8,108.81) are deducted, the amount left for the general creditors would be $11,226.13. This would constitute a dividend of 14.-833% to general creditors.

The present attorneys for the trustee, Messrs. Seligson and Zolotar, claim that they have spent 348 hours on the case and that their associates have devoted 137 hours to this matter, that is, a total of 485 hours. The work they performed for the trustee may be summarized as follows:

(a) reviewed the work of the former attorneys for the trustee.

(b) after an investigation, discovered evidence of falsification of the bankrupt's books; and inquired into the criminal acts of the bankrupt's officers.

(c) instituted a plenary action against Manufacturers Trust Company and Samuel Breiter & Company for preferential transfers in the amount of $35,000. After intensive preparation and on the eve of trial, the case was settled for $10,000.

(d) instituted a plenary action against Commercial Trading Company for a preferential transfer in the amount of $16,262.40. After the case was prepared for trial, it was settled for $6,250.

(e) handled the sale of the name and good-will of the bankrupt for $150.

(f) checked 57 claims; and reduced priority claims by $2,545.62 and general claims by $1,779.96.

The law firm of Krause, Hirsch, Gross & Heilpern were attorneys for the trustee from December 14, 1951 to August 4, 1953. The following is a summary of their work:

(a) conferences with various creditors.

(b) examination of the corporation's books and records, and of various public records.

(c) analysis of all transactions by the bankrupt.

(d) arrangements for the sale of property.

(e) examination of various persons and preparation therefor; examinations were held on 21 different occasions; over 1,000 pages of testimony were taken.

(f) conferences with successor counsel.

(g) collected accounts receivable.

(h) various administrative services.

G. George Kogut & Company were accountants for the trustee since January 11, 1952. The following is a summary of their work:

(a) statement of the affairs of the bankrupt.

(b) income and profit and loss statements for the period from January 1, 1951 to October 24, 1951.

(c) an analysis of the deficit accounts.

(d) schedules of accounts receivable.

(e) schedules of liabilities.

(f) history of the company.

(g) balance sheet as of December 31, 1950.

(h) compared income and profit and loss statements of 1950 and the statements submitted to Manufacturers Trust Company.

(i) report on cash withdrawn by Harold Reisman, an officer of the bankrupt.

(j) report on cash withdrawn by Morris Reisman, president of the bankrupt.

(k) report on the transactions of the bankrupt with Commercial Trading Company from October 1950 to April 1952.

(l) analysis of loans received from Manufacturers Trust Company during 1950 and 1951.

(m) balance sheets as of December 31, 1948, December 31, 1949 and December 31, 1950 to prove bankrupt's insolvency for several years.

(n) conferences on the suits brought against Samuel Breiter & Company, Manufacturers Trust Company and Commercial Trading Company.

(o) examined fictitious accounts receivable and checks from accounts receivable credited to officers of the corporation.

(p) schedule of payments within four months of filing the petition.

(q) assisted in the examination of certain claims that were subsequently reduced.

In arguing that the allowances are manifestly inadequate, Messrs. Seligson and Zolotar point to the fact that the Referee awarded them, in effect, a fee that amounts to only $8.25 an hour, whereas the requested allowance would amount to the modest rate of $15.46 an hour. They also emphasize the fact that it was through their skill and energetic efforts that $16,250 was collected on lawsuit settlements; that priority claims were reduced by $2,545.62; and that general claims were reduced by $1,779.96.

The accountants, G. George Kogut & Company, point out that, at normal rates, they would be entitled to $7,375, whereas the Referee allowed them only $3,200.

The principles governing this case have recently been expounded by Circuit Judge Lumbard, for a unanimous court, in Matter of Paramount Merrick, Inc., 2 Cir., 1958, 252 F.2d 482. To paraphrase Judge Lumbard, when this Court examines the size of the dividend to un-

secured creditors herein, it is obvious that it "hardly permits generous fees."

In Paramount Merrick, the dividend accruing to unsecured creditors was less than 30 percent. In the case at bar, the dividend will amount to less than 15 percent. The estate available for dividends if the Referee's allowances herein are confirmed, will amount to $11,226.13. If the additional amount ($6,650.) that the objectants request were to be allowed, the dividend to general creditors would be 7.37 percent, or the sum of $5,576.13, instead of $11,226.13. In such a case, the total requested allowance ($15,250.) to the objectants would be about three times the total estate ($5,576.13) available for dividends to the general creditors.

It must be said that the size of the estate is not the decisive or only factor to be considered in fixing the allowance of the attorneys and accountants. Some of the principal factors, in addition to the size of the estate, which enter into a determination of what is recoverable, are the time spent, the intricacy of the questions involved, the opposition encountered, the results obtained, and the "economic spirit" of the Bankruptcy Act to curtail unnecessary expenses. In the Matter of Paramount Merrick, Inc., supra; In re Herald-Post, Inc., D.C.W.D. Ky.1937, 21 F.Supp. 231; Collier, Bankruptcy (14th ed.) para. 62.12, pp. 1485 to 1497.

Taking all of these factors into consideration, the Court is convinced that the allowances as recommended by the Referee are not unreasonable and inadequate. This conclusion is reinforced by the size of the estate and the dividend available to the general creditors. See In re Goodman, D.C.W.D.N.Y.1936, 17 F.Supp. 337 [40 percent of the estate is too great an allowance]; In re Osofsky, D.C.S.D.N.Y.1931, 50 F.2d 925 [allowed attorneys 33⅓ percent where all the assets of the estate existed solely because of the attorney's efforts, and creditors received a 27 percent dividend]; In re Robbins, D.C.M.D.Pa.1930, 41 F.2d 850 [allowance of 5 to 10 percent on an estate of $5,000 to $10,000 suggested].

Judgment and discretion in fixing fees is initially exercised by the Referee. The Referee is best able to determine what fees are fair and reasonable in view of the services performed and their worth to the bankrupt estate. This Court possesses and exercises the power to review and reconsider the recommended allowances. In so doing, this Court will not set aside or modify the Referee's recommendations unless they reflect an error of law or unless the referee's findings of fact are "clearly erroneous," or some injustice will result. In the Matter of Paramount Merrick, Inc., supra; In re Valentine, D.C.D.Md.1956, 139 F.Supp. 576; In re J. H. Newport Co., D.C.E.D.Pa.1949, 84 F.Supp. 13; In re Folker, D.C.E.D.Mich.1942, 47 F. Supp. 522; In re Melhado, D.C.W.D.Pa. 1932, 1 F.Supp. 591; In re American Range & Foundry Co., D.C.D.Minn.1926, 41 F.2d 845; Collier, Bankruptcy (14th ed.) para. 62.12, pp. 1479 to 1485; General Orders in Bankruptcy, Order 47, following 11 U.S.C.A. section 53.

The problem of determining what is fair and reasonable compensation for attorneys and accountants does not always permit of facile solution. That problem becomes most acute where, as here, the attorneys and the accountants are eminent and skilled specialists and have rendered clearly valuable services to the bankrupt estate. Moreover, the Court recognizes that it is essential that the fees be adequate and sufficient in order that competent and diligent attorneys and accountants may be available in bankruptcy cases. On the other hand, the "economic spirit" of the Bankruptcy Act must be respected and observed in practice.

Upon a close review of the entire record, the Court finds that the Referee's recommendations herein are not arbitrary, unfair, unreasonable or clearly erroneous. Accordingly, the Referee's report should be and hereby is confirmed.