**In re SCHUMANN TIRE & BATTERY CO., INC., Debtor.**

**Bankruptcy No. 83-0202-BK-J-GP.**

United States Bankruptcy Court,
M.D. Florida,
Jacksonville Division.

July 25, 1988.

Ronald Bergwerk, Jacksonville, Fla., for Trustee.

Albert H. Mickler, Jacksonville, Fla., for H. Harold Hart.

Charles W. Grant, Jacksonville, Fla., Trustee.

### ORDER PURSUANT TO REMAND IN RE FEE APPLICATION OF RONALD BERGWERK

ALEXANDER L. PASKAY, Chief Judge.

THIS IS a Chapter 7 liquidation case originally commenced by an involuntary petition filed on April 5, 1983, by Mr. Ronald L. Bergwerk on behalf of certain creditors of Schumann Tire & Battery Co., Inc. (Debtor). The matter under consideration is the appropriate fee to be awarded to Mr. Bergwerk for his services, rendered to the Trustee in connection with the administration of the estate of the Debtor. The record of this case reveals the following facts relevant and germane to the resolution of Mr. Bergwerk's Applications for Allowance.

On May 2, 1983, an order for relief was entered without contest and on May 3, 1983, Mr. Charles W. Grant (Trustee) was appointed as interim trustee who later succeeded himself and now acting as the permanent trustee for the estate. On May 6, 1983, Mr. Grant applied for authorization to employ himself as attorney for the estate and his application was granted ex parte on the same day. On May 18, 1983, the Trustee filed an application to employ Mr. Bergwerk to act as special attorney for the estate and the application was approved on May 18, 1983.

On August 5, 1985, Mr. Bergwerk filed an Application for allowance for fees, and on December 27, 1985 filed an amendment to the application. In his original application Mr. Bergwerk sought an allowance in the amount of $103,200.00 plus reimbursement of expenses in the amount of $1,134.39. The Application was not supported by any documentation whatsoever as to the time spent on any particular service by Mr. Bergwerk. The amended fee application was filed on December 27, 1985. In the amended Application Mr. Bergwerk sought an allowance in the amount of $138,400.00, together with reimbursement of $1,134.73 for expenses.

On February 18, 1986, the Debtor challenged the fee application of Mr. Bergwerk. On July 31, 1986, after a duly noticed hearing the Hon. George L. Proctor, after having considered the matter, entered an order, and allowed the fee to Mr. Bergwerk for the professional services rendered by him in the amount of $35,725.88, together

with the cost allowance of $1,165.64. On August 4, 1986, the Honorable George L. Proctor entered an order and directed the Trustee to pay dividends on the only claims allowed to three creditors, and also entered an order on the same date directing the Trustee to refund to the Debtor $275,-088.96. This order was based on the finding by the court that after all allowed claims were paid in full, there remained in the estate $275,088.96. It is without dispute that this sum is yet to be paid to the Debtor even though the order was never appealed, and Mr. Grant did pay Mr. Bergwerk the sum of $35,725.88, who accepted the payment, notwithstanding that he challenged the award by his cross-appeal discussed below.

On August 11, 1986, the Debtor filed a notice of appeal challenging the order of the fee allowance. As first noted, Mr. Bergwerk in turn also filed a cross-appeal challenging the order of allowance.

On December 7, 1987, the District Court, having considered the appeal, entered an order which, inter alia, found that because the bankruptcy court failed to make specific findings of fact concerning the factors established by the Fifth Circuit Court of Appeals in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir.1974), the order of allowance was improper. The Order further vacated the order of allowance entered on July 31, 1986, and remanded the matter to the bankruptcy court for a new determination of Mr. Bergwerk's fee application with directions to consider the guidelines set forth in *Johnson v. Georgia Highway Express, Inc., supra,* and factors discussed in the case of *In the Matter of First Colonial Corporation of America,* 544 F.2d 1291 (5th Cir.), *cert. den.* 431 U.S. 904, 97 S.Ct. 1696, 52 L.Ed.2d 388 (1977).

On December 14, 1987, after entry of the order of remand, the Debtor filed a motion and requested an order directing the Trustee to refund the monies due to the Debtor. In due course the Honorable George L. Proctor scheduled a hearing pursuant to the order of remand. However, prior to the hearing the Debtor filed a Motion to Recuse the Honorable George L. Proctor, who after having heard argument of counsel and having considered the Motion, entered an order on March 8, 1988, and recused him and transferred the case to the undersigned.

On May 2, 1988, subsequent to the entry of the order of recusal, Mr. Bergwerk filed his Second Amended Fee Application seeking compensation in the amount of $171,-000.00 plus a reimbursement of expenses in the amount of $1,134.73 for his services rendered to the Trustee and costs expended in connection with this case. This last fee application which is accompanied by a memorandum is also supplemented now for the first time by a summary of the number of hours claimed to have been spent by Mr. Bergwerk on four specified matters, and a description of the services rendered by him in chronological sequence with specific amounts of time allocated to each of the services rendered. It is without dispute that the time schedule submitted by Mr. Bergwerk does not represent a contemporaneous recordation of the events as they occurred, but represents only an attempt by Mr. Bergwerk to reconstruct from memory and from some records the type of services rendered, the date on which they were rendered, and the amount of time allegedly spent on that particular service.

The record reveals that the case appeared to be a no-asset case initially according to the schedules filed by the Debtor after the entry of the Order of Relief. The primary activity of Mr. Bergwerk according to the schedules submitted with the Second Amended Fee Application centered around three adversary proceedings. The first adversary proceeding, #83–221, which was the only adversary actually tried, was filed by Mr. Bergwerk on behalf of the Trustee on May 12, 1983, and named as defendants, H. Harold Hart and Hart Enterprises, and sought recovery on five different claims set forth in the complaint. In Count I the Trustee sought to set aside certain transfers as a voidable preference by an insider and sought an invalidation of the transfer. The claim in Count II was based on Section 548 of the Bankruptcy Code and alleged that the same transfer was fraudulent and thus voidable by a

trustee. The claim in Count III was an action to void the same transfer and sought a judgment against Hart Enterprises, Inc., the other defendant named in the adversary proceeding. This claim was also based on Section 548 of the Bankruptcy Code and alleged the transfer to be fraudulent. The claim in Count IV was an action where the Trustee sought a turnover of certain properties, ostensibly, although it was not stated, pursuant to Section 542 of the Bankruptcy Code. These properties were the very same properties which were subject to the transfers attacked by the Trustee in the earlier counts. The claim in Count V sought an accounting from both the defendants and a money judgment for all the profits which the defendants allegedly realized from utilizing the assets which were transferred.

In due course the adversary proceeding was set for trial, the claims set forth in the pleadings were tried and on January 13, 1984, the bankruptcy court entered its Findings of Fact and Conclusions of Law and dismissed all claims set forth in the complaint with the exception of the claim set forth in Count V which, as noted, sought an accounting and damages. The Court concluded that the transfers of assets of the Debtor to the entities named in the complaint never in fact occurred as alleged, but were transferred to Bostwick Oil & Tire Distributors Company, Inc. (Bostwick Oil), who was a bona fide purchaser for value of the assets who should be held liable for the unpaid portion of the purchase price. Notwithstanding, the Court entered a money judgment against H. Harold Hart and Hart Enterprises in a total amount of $271,189.60, jointly and severally, and against H. Harold Hart individually, in the amount of $75,000.00. The Court also granted leave to the defendants to file a proof of claim against the estate if they so deemed to be advised. Inasmuch as Bostwick Oil was not a named defendant in this adversary proceeding, no judgment was entered against Bostwick, but only against H. Harold Hart and Hart Enterprises. The Court noted, however, that Bostwick Oil itself already filed an interpleader and sought a determination by the bankruptcy court as to whom the money should be paid on the remaining obligation for the purchase of the properties involved. Bostwick stated that it was willing to make all payments on the contract of purchase and place the payment in the registry of the court.

On July 8, 1983, the next adversary proceeding, # 83–319, was filed by Mr. Bergwerk on behalf of the estate against Hart Enterprises, Inc., and Bostwick Oil. This complaint, which consisted of two counts, sought a turnover of certain vehicles described in the complaint, or in the alternative, a money judgment for the value of the vehicles. In Count II the Trustee sought a turnover of some other vehicles which according to the complaint were titled in the name of the Debtor. The Trustee sought in the alternative a money judgment for the value of the vehicles described in the complaint.

On August 5, 1983, Mr. Bergwerk filed a Motion for Summary Judgment, accompanied by an affidavit and a copy of the title certificates to some vehicles which clearly indicated that those vehicles are, and in fact have been, the properties of the Debtor at all times. On November 17, 1983, the bankruptcy court dismissed the complaint against Hart Enterprises, Inc., but entered a Final Judgment against Bostwick Oil and directed the turnover of a 1979 Dodge pickup truck, a 1979 Chevrolet truck, and a 1980 Chevrolet pickup truck. This Final Judgment was based on the Findings of Fact and Conclusions of Law entered by the bankruptcy court on November 17, which determined that the vehicles described are in fact properties of the estate and subject to turnover, a fact which should have been obvious to the Trustee even before the complaint for turnover was filed. The record fails to disclose any disposition of claims asserted in the original and in the amended complaint concerning the other vehicles. It appears that the claims to those vehicles have been abandoned by the Trustee.

As noted earlier, the third adversary proceeding, # 83–401, was instituted by Bostwick Oil and was in the nature of inter-

pleader naming Charles Grant, the Trustee of the estate, H. Harold Hart and Hart Enterprises, Inc., as defendants. As noted earlier, Bostwick Oil admitted its liability for the balance remaining on the purchase price of the assets acquired by Bostwick Oil and sought a determination as to the proper party to receive the payments and requested an order directing the defendants to litigate between themselves as to their respective rights assigned by Bostwick Oil to the monthly payments which Bostwick was willing to make pursuant to contract of purchase. Bostwick Oil also sought to be discharged of any liability concerning the balance of the purchase price.

In due course the defendants filed their respective answers and their cross-claims against each other. Based on the stipulation filed on September 18, 1985, the bankruptcy court entered a Summary Final Judgment determining that all issues had been already litigated in Adversary Proceeding # 88–221, in favor of the cross-Plaintiff, the Trustee, against the cross-Defendant H. Harold Hart and Hart Enterprises; directed Bostwick to make all future monthly payments under the contract of purchase to the Trustee. The judgment further provided that upon so doing, Bostwick would be released of any further liability based on the purchase of the assets by the Debtor.

According to the Second Amended Fee Application, Mr. Bergwerk spent 102.3 hours on Adversary Proceeding # 83–221; the only adversary proceeding which was actually tried, and according to Mr. Bergwerk it was a two-day trial; the time claimed to have been spent on Adversary Proceeding # 83–319, the turnover case, was 8.8 hours; and on the Adversary Proceeding # 83–401, the interpleader instituted by Bostwick, Mr. Bergwerk expended 13.1 hours for a total of 187 hours on the three adversary proceedings. In addition Mr. Bergwerk claimed to have spent 75.9 hours in the main case even though Mr. Grant, the Trustee, was employed himself as counsel, and also sought an allowance and obtained an allowance for his services as an attorney in the amount of $1,108.00.

The legal services rendered by Mr. Bergwerk in the general case appear to have been related to numerous objections to claims.

According to the final report of the Trustee filed on December 24, 1985, the Trustee realized $414,570.67, disbursed during the administration of the estate $7,223.54, and at the time the final report was filed had in his account the balance of $407,294.13. It should be noted, however, that the final report of the Trustee did not reflect the payment of $35,725.88 and $1,134.73 which was paid to Mr. Bergwerk by the Trustee. Thus, the balance indicated in the Trustee's final report should be reduced by that amount. The total unsecured claims allowed are in the amount of $104,181.16. While the final report fails to indicate whether or not any payment has been made to the Trustee for his services or to himself for services rendered by him as attorney for himself, it appears that an accountant was paid $110.00; Mr. Bergwerk $1,165.64 as reimbursement for his expenses and Mr. Grant, $1,877.25 for his expenses. While it is true that initially the total claims filed were much greater, the bulk of the claims were disallowed because Mr. Hart, the principal of the Debtor, paid those claims, post-petition, and his original claim filed in the amount of $633,279.98 was reduced to $93,100.25 and there is now a surplus which will be turned back to the Debtor directly or indirectly to Mr. Hart who actually paid all the funds which are currently in possession of the Trustee. It further appears that the bar date to file claims in this case was expired on January 8, 1984, and by August 1984 there was more than enough to pay all claims in full. Notwithstanding Mr. Bergwerk instituted a garnishment proceeding in December 1985 which produced an additional $217,829.00 in funds which obviously could be returned to the Debtor unless, of course, the bulk of the funds on hand would be consumed by the allowance of administrative expenses, notably by a fee award to Mr. Bergwerk in addition to the other administrative expenses which already have been paid.

The Second Amended Fee Application of Mr. Bergwerk also indicates that he spent 29 hours on his cross-appeal of the appeal which, according to Mr. Bergwerk, was a successful appeal, claiming that he prevailed on his own appeal even though the order of allowance entered by the bankruptcy court on his original fee application on August 4, 1986, awarding him $35,-725.88 plus costs in the amount of $1,165.64 was vacated and set aside by the District Court with the direction to the bankruptcy court to consider the fee application of Mr. Bergwerk de novo. Mr. Bergwerk also claims to have spent 18.7 hours after the order of remand. Considering the amount sought and the hours stated, it appears that if the amount sought is allowed it would result in compensation at a rate of $673.22 per hour. According to the Second Amended Fee Application, Mr. Bergwerk spent a total of 253.8 hours rendering his services to the estate. The expert who testified on behalf of Mr. Bergwerk's fee application stated that the enhancement of a fee award is appropriate because the risk factor and the results achieved and the reasonable fee should be in the area of $135,000.00. The expert who presented in opposition urged that no enhancement is appropriate whatsoever and the fee should not in any event exceed the fee computed on the lodestar method.

These are the basic facts which are relevant to the matter under consideration which is the appropriate fee award to be granted to Mr. Bergwerk for his services. It was uniformly recognized prior to the enactment of the Code that allowances to professionals should be governed by the "economic spirit of the Act." *See, In re State Thread Co.*, 126 F.2d 296 (6th Cir. 1942); *In re Dunnhill Suspender & Belt Corporation*, 162 F.Supp. 608 (S.D.N.Y. 1958); *In re Oakland Lumber Co.*, 174 F.2d 634 (2d Cir.1979); *In re Gilbert*, 276 U.S. 294, 48 S.Ct. 309, 72 L.Ed. 580 (1928).

Section 330 of the Code which governs allowances was designed by Congress to assure fair compensation to professionals by providing that the reasonable compensation must be based on the nature, extent, and the value of the services rendered, the time spent on such services and the cost of comparable services rendered in cases other than cases under Title 11. At first blush, it appears that the reference to the cost of comparable services was intended to bring about the basic change from the existing law. However, it is evident that this reference was not intended to bring about the basic change and there is always an inherent public interest involved in administration of cases under Title 11 which always must be considered in awarding fees. *Massachusetts Mutual Life Insurance Co. v. Brock*, 405 F.2d 429, 432 (C.A. 5, 1968), *cert. denied*, 395 U.S. 906, 89 S.Ct. 1748, 23 L.Ed.2d 220.

Historically Courts have utilized two basic methods for determining reasonable attorney fees. The first method is the so-called "lodestar" method which has been adopted by the 2nd, 3rd, and D.C. Circuits. *See Lindy Bros. Builders v. American Radiator & Standard Sanitary Corp.*, 487 F.2d 161 (3d Cir.1973); *Detroit v. Grinnell Corp.*, 495 F.2d 448 (2d Cir.1974); and *Copeland v. Marshall*, 641 F.2d 880 (D.C. 1980), and the second method being the so-called "12–factor approach" adopted in various forms by other circuits first enumerated, *Johnson v. Georgia Highway Express*, 488 F.2d 714 (5th Cir.1974).

The 12 factors are (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. 488 F.2d at 717–719. These factors are derived directly from the American Bar Association Code of Professional Responsibility, Disciplinary Rule 2–106 (1980).

The question of reasonable attorney fees was reconsidered recently by the Supreme

Court in *Hensley v. Eckerhart,* 461 U.S. 424, 433, 103 S.Ct. 1933, 1939, 76 L.Ed.2d 40 (1983), *Blum v. Stenson,* 465 U.S. 886, 897, 104 S.Ct. 1541, 1548, 79 L.Ed.2d 891 (1984), *Pennsylvania v. Delaware Valley Citizens' Council for Clean Air,* 478 U.S. 546, 106 S.Ct. 3088, 92 L.Ed.2d 439 (1986) and *Riverside v. Rivera,* 477 U.S. 561, 568, 106 S.Ct. 2686, 2691, 91 L.Ed.2d 466 (1986), which emphasized that the initial calculation of fees is hours reasonably expended times a reasonable hourly rate, taking into account in that calculation appropriate factors. There is a "strong presumption" that the lodestar is the reasonable fee. In very limited circumstances the result may be adjusted. *See Norman v. Housing Authority of Montgomery,* 836 F.2d 1292, 1299 (11th Cir.1988).

In *Hensley* the Supreme Court also stated that the party who seeks an award or fees must submit evidence supporting the hours worked and the rates claimed and where the documentation of hours is inadequate, the court may reduce the award accordingly. Most Circuits are in agreement that the time records must be contemporaneous. *Grendel's Den, Inc. v. Larkin,* 749 F.2d 945 (1st Cir.1984); *Ramos v. Lamm,* 713 F.2d 546 (10th Cir.1983); *New York State Association for Retarded Children, Inc. v. Carey,* 711 F.2d 1136 (2d Cir.1983); *Copeland v. Marshall,* 641 F.2d 880 (D.C.Cir.1980) (en banc). The absence of such records may justify reduction of the fee allowance. *See Hensley v. Eckerhart, supra.*

In applying the lodestar method in this particular instance the Court must eliminate excessive time, duplicative time and unproductive time and in determining the reasonable hourly rate consider what generally prevails in a community.

 However, the process does not end with a rigid calculation of the reasonable hour times multiplied by reasonable rate, and there always remains a consideration of whether or not it is appropriate to adjust the fee upward or downward or as generally referred to as to "bonus award to a professional." One would be less than candid not to admit that under special cir-cumstances the courts at times have increased the award considering special factors. *See Underwood v. Pierce,* 761 F.2d 1342, 1347 (1985), *amended,* 802 F.2d 1107 (9th Cir.1986), *cert. granted,* —— U.S. ——, 107 S.Ct. 2177, 95 L.Ed.2d 834 (1987) (allowing rates of $80–$120/hour based on novelty, difficulty, contingency, undesirability, results obtained, expertise), cost of living adjustments, *see e.g., Trichilo v. Secretary of Health & Human Services,* 823 F.2d 702, 706 (2d Cir.1987); *Allen v. Bowen,* 821 F.2d 963, 968 (3d Cir.1987); *Hirschey v. FERC,* 777 F.2d 1, 5 (D.C.Cir. 1985). In extraordinary situations, an adjustment to the lodestar may be made. These adjustments are generally based on the following factors: *"results obtained", "quality", "contingency or risk"* and *delay.* The quality of representation generally is reflected in the reasonable rate and may justify an upward adjustment only in the rare case where the fee applicant offers specific evidence to show that the quality of service rendered was superior to that one reasonably should expect in light of the hourly rates charged and that the success was exceptional. The Supreme Court held that the superior quality of an attorney's performance does not constitute conditions for awarding a premium because when an attorney accepts a case he and she are already obligated to perform to his or her maximum capability to produce the maximum results which he or she is capable of producing. The Supreme Court revisited the question in a second Delaware case, *Pennsylvania v. Delaware Valley Citizens' Council for Clean Air,* —— U.S. ——, 107 S.Ct. 3078, 97 L.Ed.2d 585 (1987) ("Delaware Valley II") in 1987 where it retreated from its holding in *Blum V. Stenson, supra* in which the Court held that a contingency factor risk was a proper basis for an upward adjustment to the lodestar. In so doing, the court stated:

> [W]e are unconvinced that Congress intended the risk of losing a lawsuit to be an independent basis for increasing the amount of any otherwise reasonable fee for the time and effort expended in prevailing (107 S.Ct. at 3086).

■ In the Court's view, cases are risky because of the novelty and difficulty of the issues presented, and because of the potential for protracted litigation. The Court reasoned that such factors are already built into the lodestar calculation, and "any further increase in this sum based on the risk of not prevailing would result not in a 'reasonable' attorneys' fee, but in a windfall for an attorney who prevailed in a difficult case. The allowance needs to be generous enough to encourage lawyers to render the necessary and exacting services that bankruptcy cases often require. *In re Yale Express System, Inc.*, 366 F.Supp. 1376, 1381 (S.D.N.Y.1973). However, the rates for similar kinds of services in private employment is only one element among others which plays a role in determining a reasonable fee and the reference in the Code in subsection (a) to compensate in private employment is not a controlling determinant in what should be allowed in bankruptcy cases. *Notes of Committee on the Judiciary, Senate Report No. 95–989.* Some Courts of Appeals have stated flatly that plaintiffs should not recover fees for any work on unsuccessful claims. *See, e.g., Bartholomew v. Watson*, 665 F.2d 910, 914 (9th Cir.1982); *Muscare v. Quinn*, 614 F.2d 577, 579–581 (7th Cir.1980); *Hughes v. Repko*, 578 F.2d 483, 486–487 (3d Cir.1978).

■ Considering these principles, this Court is satisfied that the amount sought by Mr. Bergwerk in his amended fee application, that is, the sum of $171,000.00, is grossly excessive. First, it is without dispute that the time records of Mr. Bergwerk are not contemporaneous recordations but merely represent an attempt by Mr. Bergwerk to reconstruct from memory and some documents the type of services rendered and the time spent on the particular services.

Second, applying the lodestar method, Mr. Bergwerk testified that his regular hourly rate is $125.00 and even assuming, without admitting, that the time spent by Mr. Bergwerk in rendering the legal services to the estate was in fact 253.8 hours, simple mathematics would indicate a maximum fee allowance of $31,725.00. Thus, even discounting the number of hours allegedly spent by Mr. Bergwerk first by readjusting the correct mathematical total comes to 247.8 hours, and further, considering that several of the services described are totally vague and unspecified, *e.g.,* 8 hours spent for preparation of trial and numerous unspecified conferences with the Trustee who is himself an attorney, it is impossible to determine whether the time spent on the specific services was necessary and whether the time was reasonably spent. *Pennsylvania v. Delaware Valley Citizen's Council for Clean Air, supra.*

In addition, the schedules submitted also reveal that Mr. Bergwerk spent 29 hours on appeal from the order of Judge Proctor, an order which was vacated on appeal by the District Court. Contrary to the contention of Mr. Bergwerk, this Court is of the opinion that Mr. Bergwerk certainly was not the prevailing party on appeal, and while it is true he filed a cross-appeal, the District Court remanded the matter not because the District Court found that the allowance made to Mr. Bergwerk was insufficient and should be reconsidered, but because the court making the allowance did not take into consideration and make findings concerning the factors set forth in the 5th Circuit in *Johnson v. George Highway Express, supra.*

It is contended, however, by Mr. Bergwerk, that because of the excellent results he has achieved, he is entitled to a bonus, relying on cases which recognized that the bonus may be appropriate under certain circumstances. *See Trichilo v. Secretary of Health & Human Services, supra; Allen v. Bowen, supra; Hirschey v. FERC, supra.*

As noted earlier, the primary activity of Mr. Bergwerk centered around the three adversary proceedings described above. Out of the three, one was actually tried in which Mr. Bergwerk asserted five separate claims, lost on four and prevailed on one. The second adversary proceeding which involved the turnover of vehicles was resolved without trial in light of the fact that it was evident from the outset that some of

the vehicles in question were titled in the name of the Debtor, a fact which either was known or should have been known to the Trustee's attorney. The third adversary proceeding which was also resolved without trial involved an interpleader action filed by Bostwick Oil in which Bostwick Oil conceded that it owed the balance of the purchase price for the assets and was willing to pay the same to the Trustee. Thus, when the Bostwick Oil matter was resolved, and the time to file claims expired, it became evident that there were more than ample funds available to pay all costs of administration and all the allowable claims in full with interest. While it is true that the claim of Mr. Hart was still in dispute, this fact was really of no consequence because if the claim was allowed as filed, Mr. Hart would have received funds in the form of a dividend on his claim and, if disallowed or substantially reduced, he would also receive a refund of surplus funds unless, of course, the surplus was fully consumed by attorney fees and other costs of administration items. Thus, any further efforts by Mr. Bergwerk to pursue additional collections served no purpose whatsoever other than to create a war chest from which a generous award could be made to him.

█ It needs no elaborate discussion to point out that none of the operating chapters under the Code were designed by Congress to serve as relief chapters for attorneys but for creditors and debtors. Thus, the so-called results achieved when viewed realistically, the creation of an estate of this size loses any significance because the surplus funds under the scheme of distribution under § 726 were to be returned to the Debtor, whose sole principal as noted was the very person who contributed, albeit involuntarily, the additional funds which are now in the estate. This fact certainly would not justify to adjust upward the lodestar calculations in this instance, let alone to the extent sought by Mr. Bergwerk.

Considering the risk factor even if one accepts the proposition that a risk warrants an enhancement of the fee, *see, Pennsylvania v. Delaware Valley Citizen's Council for Clean Air (Delaware Valley II)*, *supra*, it is evident when Bostwick Oil agreed to pay the balance of the purchase price for the assets acquired from the Debtor, there was no longer any risk that there would not be funds available to pay the cost of administration. Thus, there was no justification based on risk factor to pursue the garnishment proceeding against Mr. Hart.

Having considered the lack of contemporaneous and specifically clear time records, the specificity or lack of same of the description of the services, the time necessarily spent, the special factors recognized by courts such as delay in receiving payments, this Court is satisfied that a reasonable fee in this instance should not exceed the original award made by Judge Proctor of $35,-725.88 and that should represent full compensation to Mr. Bergwerk for his services rendered to the estate.

Accordingly, it is

ORDERED, ADJUDGED AND DECREED that the Second Amended Fee Application filed on May 2, 1988 by Mr. Ronald L. Bergwerk be, and the same is hereby denied. It is further

ORDERED, ADJUDGED AND DECREED that the original award in the sum of $35,725.88 be, and the same is hereby reaffirmed. It is further

ORDERED, ADJUDGED AND DECREED that the balance of the funds held by the Trustee shall be refunded to the Debtor Schumann Tire & Battery Co., Inc., after the expiration of 10 days from the date of the entry of this Order.