In re Jean M. EVANS, Debtor.

Office of the U.S. Trustee, Movant,

v.

Lawrence A. Durkin, Esquire, Respondent.

No. 5–00–04121.

United States Bankruptcy Court, M.D. Pennsylvania.

Dec. 6, 2001.

Greg Lyons, Office of the U.S. Trustee, Harrisburg, PA,

Lawrence A. Durkin, Scranton, PA, for debtor.

Mark J. Conway, Scranton, PA, trustee.

## *OPINION*

JOHN J. THOMAS, Bankruptcy Judge.

The United States Trustee has asked the Court to review the fee charged by counsel for the Debtor. Lawrence A. Durkin, Esquire, has filed a Rule 2016 statement indicating that he received $1400.00 for services rendered in connection with the case. The United States Trustee has challenged this fee suggesting that it represents a significant departure from the rate of compensation charged by "comparable skilled practitioners." On June 7, 2001, a hearing was held on the matter.

Attorney Durkin testified that he was an occasional bankruptcy practitioner whose legal practice is generally devoted to civil litigation, decedent's estates, and family law. He accepted this case because the Debtor was a longtime client of his and she insisted that he represent her. He testified that he had spent 12.3 hours of time on the case which, at his normal hourly rate of $200.00, would total $2,460.00. His support staff spent 1.9 hours which, at their hourly rate of $55.00, would amount to $104.50. He further testified that costs and filing fees amounted to $298.50. He reaffirmed that he received a flat fee of $1400.00, which included the petition filing fee of $200.00. His client, Jean Evans, did not testify.

The United States Trustee requests disgorgement alleging that Durkin's fee was significantly over the $800.00 average fee charged by the local practitioner for an unremarkable chapter seven filing. The United States Trustee also argues that five hours of Durkin's time was used to rectify errors in the schedules that should not have been made in the first instance. At the heart of the controversy lies the issue as to the mechanics upon which a professional's fees should be reviewed.

■ Section 329(b) of the Bankruptcy Code empowers the Bankruptcy Court to review attorney's fees. Broad discretion is vested in the court to conduct such review. *In re Lan Assocs., XI, L.P.,* 192 F.3d 109, 122–123 (3d Cir.1999).

■ The testimony in this case confirms that this bankruptcy deviated little from the typical "no asset" chapter seven. Any digressions from the normal course were caused by Durkin's failure to properly complete the bankruptcy schedules prior to their initial filing. Appropriate amendments mooted whatever issues were generated by this deficiency.

Attorney Durkin is an infrequent bankruptcy practitioner whose customary hourly rates reflect his experience and expertise in fields other than bankruptcy.

This Court has randomly (and unscientifically) reviewed 50 chapter seven bankruptcy cases filed in 2000–2001 in this division. I have found that the average fee charged approximated $700.00. The fees ranged from $400.00 to $1400.00. The rates charged by less frequent practitioners were somewhat higher than those of regular bankruptcy practitioners.

■ Fees certainly have a maximum range over which the Court will not hesitate to order disgorgement. Whether these fees have topped that maximum range is a decision that depends on a number of factors, some of which are conveniently set forth in the Rules of Professional Conduct 1.5 [1], as follows:

(1) the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly;

(2) the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer;

(3) the fee customarily charged in the locality for similar legal services;

(4) the amount involved and the results obtained;

(5) the time limitations imposed by the client or by the circumstances;

(6) the nature and length of the professional relationship with the client;

(7) the experience, reputation, and ability of the lawyer or lawyers performing the services; and

(8) whether the fee is fixed or contingent.

The Rules of Professional Conduct, for the most part, parrot the 12 popular "*Johnson* factors" relied on by a host of courts when evaluating the reasonableness of fees.[2] *Hensley v. Eckerhart,* 461 U.S. 424, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983); *United States Leather, Inc. v. H & W Partnership,* 60 F.3d 222, 229 (5th Cir. 1995); *Rum Creek Coal Sales, Inc. v. Caperton,* 31 F.3d 169 (4th Cir.1994); *Grant v. George Schumann Tire & Battery Co.,*

---

**1.** The ABA Model Rules of Professional Conduct are applicable to lawyers practicing in federal court. *In re Corn Derivatives Antitrust Litigation,* 748 F.2d 157, 160 (3rd Cir.1984),

*cert. denied,* 472 U.S. 1008, 105 S.Ct. 2702, 86 L.Ed.2d 718 (1985).

**2.** *Johnson v. Georgia Highway Express, Inc.,* 488 F.2d 714 (5th Cir.1974).

908 F.2d 874 (11th Cir.1990); *Brown v. Phillips Petroleum Co.,* 838 F.2d 451, 454 (10th Cir.1988), *cert. denied,* 488 U.S. 822, 109 S.Ct. 66, 102 L.Ed.2d 43 (1988); *Fulps v. City of Springfield, Tenn.* 715 F.2d 1088 (6th Cir.1983); *Copeland v. Marshall,* 641 F.2d 880, 205 U.S.App.D.C. 390 (1980). *Johnson* supplements Rule 1.5 by adding to the consideration (1) the undesirability of the case and (2) awards in similar cases.[3] *Johnson,* 488 F.2d 714.

■ In measuring the reasonableness of counsel's fees, there appears to be two underlying principles. First, "the baseline rule for professional fees in bankruptcy cases is for firms to receive their customary rates." *Zolfo, Cooper & Co. v. Sunbeam–Oster Co.,* 50 F.3d 253, 259 (3d Cir. 1995). This is an acknowledgment that an attorney's hourly rate is a "starting point provided by the market for analysis of a reasonable fee." *Id.* at 259 n. 4, *citing Gusman v. Unisys Corp.,* 986 F.2d 1146, 1150–51 (7th Cir.1993). Second, "the cost of comparable services factor has an overarching role to act as a guide to the value of the services rendered given their nature and extent." *In re Busy Beaver Bldg. Centers, Inc.,* 19 F.3d 833, 849 (3d Cir. 1994). In an anomalous twist, the "cost of comparable services," has also been referred to as the "market" by which I must be guided. *Id.* at 849.

Initially, I note that the somewhat vague written details in Durkin's fee statement have been adequately supplemented by his testimony.

From the record created at the time of hearing, I can only assume Durkin's "customary" fee for a chapter seven bankruptcy was a "fixed" fee of $1200.00. This serves as the baseline upon which I review the fees before me. Guiding my consideration as I review other factors, however, is

the appreciation that the typical chapter seven legal fee is $700.00.

Evaluating the ultimate fee allowance requires that I visit each of these factors.

1. *The time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly.*

I believe it is fair to say that there were no novel issues presented by this bankruptcy, nor was any extraordinary skill required to complete the client's goal. It is true that more than the average time and labor were required of Durkin, but that was the result of counsel's relative inexperience in this field. Overall, this factor would suggest that counsel's fees should adjust downward in light of the typical fee of $700.00 in cases of this nature.

2. *The likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer.*

Simply stated, there was no likelihood that representation in Jean Evans' bankruptcy would preclude other employment by Durkin. Another downward adjustment is justified.

3. *The fee customarily charged in the locality for similar legal services.*

Attorney Durkin's fee was over 70% higher than that typically charged for similar work. This conclusion also suggests a downward adjustment.

4. *The amount involved and the results obtained.*

This bankruptcy was completely unremarkable in amount and results. Again an adjustment toward a typical fee is warranted.

---

**3.** The first factor in Rule 1.5 actually incorporates three *Johnson* factors.

5. *The time limitations imposed by the client or by the circumstances.*

While time limitations were not imposed by the client, Durkin's testimony described Jean Evans as an elderly woman who needed much assistance in completing the schedules. Additional office appointments were required and a delayed response resulted in the case staying open longer than was necessary. This factor appears to suggest a premium charge.

6. *The nature and length of the professional relationship with the client.*

The hallmark of Durkin's testimony was that he was representing an individual, the family of whom had been a longstanding client of his 30–year practice as an attorney. He concluded it was important to the client that he represent her in this matter. Such a preference by a client deserves recognition. Factor this element in favor of an elevated fee.

7. *The experience, reputation, and ability of the lawyer or lawyers performing the services.*

There was nothing noted in the record under consideration that implicates this factor in a positive manner. Attorney Durkin's expertise and ability were clearly not in the bankruptcy forum. This factor suggests a downward adjustment.

8. *Whether the fee is fixed or contingent.*

A fixed fee provides a roof at which fees can be capped. It is generally believed to justify a premium over the typical charge based on a lodestar calculation since the lawyer is locking the legal fee into a definite parameter. It has no adjustment impact on Durkin's fee because it was, in fact, fixed.

9. *The undesirability of the case.*

There was nothing that suggested Jean Evans would not have been able to secure any number of lawyers to represent her in this manner. Again, this factor suggests an adjustment toward the norm.

10. *Awards in similar cases.*

This factor is similar to factor number four. As may be culled from a review of *Johnson,* 488 F.2d 714, however, this consideration allows the court to review allowances beyond the locale of the practitioner. Notwithstanding such an opportunity, no evidence was offered as to traditional charges in other areas of the country, nor am I aware of any significant difference in chapter seven fees from that which serves as the customary norm in this case. In fairness, this should not influence my decision in this case.

Of course, subsumed within these aforementioned factors are those nonexclusive considerations which I must weigh, as mandated by the Code. 11 U.S.C. § 330(a)(3).[4]

While a score sheet of the factors called into play does not lend itself to a strict mathematical calculation as to the fee this

---

4. In determining the amount of reasonable compensation to be awarded, the court shall consider the nature, the extent, and the value of such services, taking into account all relevant factors, including—

  (A) the time spent on such services;

  (B) the rates charged for such services;

  (C) whether the services were necessary to the administration of, or beneficial at the time at which the service was rendered toward the completion of, a case under this title;

  (D) whether the services were performed within a reasonable amount of time commensurate with the complexity, importance, and nature of the problem, issue, or task addressed; and

  (E) whether the compensation is reasonable based on the customary compensation charged by comparably skilled practitioners in cases other than cases under this title.

Court should deem "reasonable" under 11 U.S.C. § 329, it is apparent that their consideration suggests a downward adjustment is warranted. This is true regardless of whether I view the market as creating a customary rate in the community or merely driving the attorney's individual rates.

Recalling that the "baseline" for the award of fees is the firm's customary rates, I am satisfied that a modest disgorgement of $200.00 is warranted.

An Order will follow.

### ORDER

For those reasons indicated in the Opinion filed this date, Attorney Lawrence A. Durkin is ordered to disgorge the sum of $200.00 to the above-captioned Debtor.