**In re BLUE STONE REAL ESTATE, Construction and Development Corporation, P.D.Q. Acquisitions, LLC, Avalon Investment Corporation of Hernando, Jet Bead, Inc., T.C.B. Acquisitions, LLC, and DDD Ranch, Inc., Debtors.**

Nos. 8:08–bk–05299–CPM, 8:08–bk–07227–CPM, 8:08–bk–07228–CPM, 8:08–bk–07230–CPM, 8:08–bk–07231–CPM, 8:08–bk–07229–CPM, 8:08–bk–05299–CPM.

United States Bankruptcy Court, M.D. Florida, Tampa Division.

Jan. 4, 2013.

Edward J. Peterson, III, Susan H. Sharp, Stichter, Riedel, Blain & Prosser, PA, Jacqueline A. Simms-Petredis, Akerman Senterfitt, Tampa, FL, James M. Donohue, Ausley & McMullen, Tallahassee, FL, for Debtors.

Theresa M. Boatner, Cynthia Burnette, Office of the U.S. Trustee, Tampa, FL, for U.S. Trustee.

## AMENDED[1] SUPPLEMENTAL ORDER ON HANCOCK BANK'S OBJECTION TO INVOICES OF STEVEN S. OSCHER AND OSCHER CONSULTING, P.A.

CATHERINE PEEK McEWEN, Bankruptcy Judge.

These cases came on for consideration after a trial held on June 14, 2012, on the contested matter arising from the objection of Whitney National Bank n/k/a Hancock Bank (Doc. No. 591) (the "Objection") to post-confirmation invoices (the "Invoices") of Steven S. Oscher and Oscher Consulting, P.A. ("Oscher"). This order supplements the Court's order entered on August 11, 2010 (Doc. No. 675), permitting an interim, partial payment on the Invoices.

Oscher is the post-confirmation "Distribution Agent" under the confirmed joint liquidating plan in these six affiliate cases. Pursuant to the plan, Oscher's services are to be compensated based on monthly invoices but only after certain parties, including Hancock Bank, are provided notice and an opportunity to object. Hancock Bank timely objected to the October 2009 invoice as well as "all subsequent monthly payment requests." In response, Oscher filed composites of the Invoices (Doc. 836).

The composites comprise three statements covering 36 months of work, on which Oscher spent 2,634 hours and for which Oscher billed $246,885.45, yielding a blended hourly rate of $93.73. Most of the charges, aggregating $212,666.45 (more than 86 percent of the total compensation sought), accrued during the 15-month period immediately following entry of the confirmation order (May 1, 2009, through July 31, 2010). During this period, Oscher attempted to sell the real property, continued to gather records, analyzed transfers for avoidability, filed avoiding actions, and objected to claims. The bank records and other records of the Debtors were voluminous, which no doubt caused Oscher to spend more time than usual on identifying potential voiding actions. However, the Invoices reflect numerous tasks for which Oscher charged no compensation. Oscher seeks no expense reimbursement.

■■■ Compensation for professionals employed pursuant to 11 U.S.C. § 327 is governed by 11 U.S.C. § 330. The latter section requires that the compensation be reasonable and be for actual, necessary services. 11 U.S.C. § 330(a)(1)(A). When a court considers the reasonableness of compensation under 11 U.S.C. § 330, it must do so with reference to "the nature, extent, and the value" of the services based on factors expressly set out in the statute, which factors essentially lead one to the underpinnings of a lodestar analysis. 11 U.S.C. § 330(a)(3)(A)–(F). A lodestar analysis involves multiplying the reasonable number of hours expended on necessary services by a reasonable hourly rate for each timekeeper. *Grant v. George Schumann Tire & Battery Co.*, 908 F.2d 874, 879 (11th Cir.1990) (requiring

---

1. This order amends Doc. 871 to correct scrivener's errors and add some procedural and other facts for context prior to publication. As this order makes no substantive changes, the effective date of the prior order remains controlling for appeal purposes.

bankruptcy courts to utilize the lodestar method when determining reasonable compensation under 11 U.S.C. § 330). Adjustments to the lodestar, both in terms of hours and rates, are determined with reference to 12 factors set forth in *Johnson v. Georgia Highway Express, Inc.,* 488 F.2d 714 (5th Cir.1974).[2] *Grant,* 908 F.2d at 879. However, given the 1994 and 2005 amendments to 11 U.S.C. § 330, some of the *Johnson* factors are now subsumed or overlapped by the statute. Compensation allowable under § 330(a)(3) is, however, circumscribed by 11 U.S.C. § 330(a)(4)(A): A court may not allow compensation for "(i) unnecessary duplication of services; or (ii) services not—(I) reasonably likely to benefit the estate; or (II) necessary to the administration of the estate."

■ In the Objection, Hancock Bank does not assert that Oscher billed for duplicative services. Nor does Hancock Bank take issue with the necessity of services to the administration of the estate. Instead, the Objection states Hancock Bank's "concern" that "unencumbered assets of $2.0 million, which *may* have existed as of confirmation, have rapidly been depleted" by the costs of professional services "with minimal recoveries and little benefit to the estate." Objection at para. 6 (emphasis by the Court). In its post-trial memorandum (Doc. No. 842), Hancock Bank concedes that post-confirmation cash, after payment of administrative expenses, stood at approximately $326,000.00. The main thrust of Hancock Bank's post-trial argument is that Oscher's post-confirmation liquidation efforts, in hindsight, did not result in "comparable recovery" to the unsecured creditors. A secondary argument made in the post-trial memorandum is that the Invoices do not categorize tasks by discrete categories. An examination of the Invoices discloses otherwise (see second column titled "Task Codes").

That Hancock Bank takes exception to a nominal distribution is understandable. Hancock Bank, as did most of the other creditors in these cases, made a loan secured by real estate. Hancock Bank and these other creditors experienced devaluation of their collateral during the economic downturn that began in America about a year before these cases were filed. Consequently, Hancock Bank suffered an unexpected (at the time its loan was underwritten) and large deficiency claim. But the Court cannot view the compensability of estate professionals solely through the singular focus of an understandably disappointed creditor.

■ The Bankruptcy Code requires a broader view of compensability of professionals' services. "Services may be 'necessary to the administration of the estate' without financially benefitting the estate." *See In re Veltri Metal Products, Inc.,* 189 Fed.Appx. 385, 389–90 (6th Cir.2006) and cases cited therein. And a professional's actions may "benefit the estate even where, under the payment priorities established in the Bankruptcy Code, no reasonable probability of a distribution to the unsecured creditors exists." *Id. See also,*

---

**2.** The *Johnson* factors are: (1) The time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; (12) awards in similar cases. *Johnson,* 488 F.2d at 717–719.

*In re Value City Holdings,* 436 B.R. 300, 306 (Bankr.S.D.N.Y.2010) (the amount or timing of distributions is not a factor set out in 11 U.S.C. § 330).

▪ Moreover, a court does not determine reasonableness through hindsight. *Id.* The Bankruptcy Code, in 11 U.S.C. § 330(a)(4)(A)(ii)(I), requires "only that the services in question had a reasonable likelihood of benefitting the estate at the time they were provided, not that they actually did provide a benefit." *In re Jankowski,* 382 B.R. 533, 545 (Bankr.M.D.Fla.2007).

▪ Further, if the Court's discretion in awarding compensation were limited by the amount disbursed to creditors, then compensation in bankruptcy cases would always be a *de facto* contingency fee. Congress never intended that all professional fees in bankruptcy cases be compensated on a contingency basis. *In re Broughton Ltd. P'ship.,* 474 B.R. 206, 214 (Bankr.N.D.Tex.2012).

As is apparent from the record of these cases, they were complex, their primary assets were developable real estate in a down economy, and, from the outset, they involved accusations of improper conduct and transfers orchestrated by the Debtors' common principal. For example, see the United States Trustee's motion to appoint a chapter 11 trustee (Doc. 293). Therefore, the atmosphere in which Mr. Oscher had to operate to fulfill his fiduciary duties to creditors and to ensure the integrity of the bankruptcy system was highly charged with suspicion of the Debtors' principal. This charged atmosphere required heightened scrutiny of possible avoiding actions as well as heightened scrutiny of allowance of claims by affiliates and others with whom the Debtors' principal dealt. Had Mr. Oscher failed to exercise such heightened scrutiny, he would have been subject to attack for not going far enough. In other words, he was stuck between the proverbial rock and hard place. And so, Mr. Oscher chose to do what he believed was the right thing to do, or, as he put it during his testimony at trial, "to not have performed this service and not tried to do the investigation and analysis as we did would, frankly, have been wrong." The Court believes he made the right call, particularly from the perspective of ensuring systemic integrity.

To that end, Oscher filed numerous adversary proceedings seeking relief in the aggregate of nearly $4.9 million. *See Notice of Filing Summary of Adversaries* (Doc. No. 843). Oscher has settled some of them but usually only after opposition, which necessarily resulted in the escalation of Oscher's fees and those of his counsel. Oscher has not been asked by any creditor in these cases or the United States Trustee to cease pursuing liquidation of avoiding actions.

Oscher's services resulted in the disallowance of millions of dollars of claims. *See Notice of Filing Summary of Claims* (Doc. No. 844). Of course, the claims allowance process is a prerequisite for calculating distributions to claimants with valid claims. Neither Hancock Bank nor any other creditor can receive a distribution absent completion of this process. In some instances, Oscher faced opposition from his targets, which opposition, again, generated the need for additional services.

▪ The Invoices show that Oscher exercised appropriate "billing judgment." Such judgment requires professionals to exclude any excessive, unnecessary, or redundant hours from their fee applications. *See Franklin v. Hartford Life Ins. Co.,* 2010 WL 916682, *3 (M.D.Fla. March 10, 2010) (citing *ACLU of Ga. v. Barnes,* 168 F.3d 423 (11th Cir.1999)). The Invoices reflect numerous instances of discounting

and demonstrate Oscher's compliance with the billing judgment rule.

Oscher's compliance with the billing judgment rule is not surprising to the Court. The undersigned judge has observed Oscher's bankruptcy practice over the course of more than two decades, both from the bench and prior thereto in private practice. Mr. Oscher has a track record of being reasonable, responsible, and prudent. Oscher is not among some professional firms that operate with a mindset of self-dealing. Indeed, Oscher is one of a very few fee applicants which provide transparency in showing compliance with the billing judgment rule. There is nothing in the record to suggest that Mr. Oscher and his associates acted in these cases in a manner inconsistent with his demonstrated reasonableness, responsibility, and prudence of the past.

In conclusion, the Court finds that the hours and hourly rates charged by Oscher are reasonable within the meaning of 11 U.S.C. § 330(a) and the *Johnson* factors not already subsumed by 11 U.S.C. § 330(a)(3). The Court additionally finds that Oscher's compensation is not in any way prohibited by 11 U.S.C. § 330(a)(4)(A)(ii)(I) because the services were either (or both) reasonably likely to benefit the estate at the time the services were rendered or were necessary to the administration of the estate—and, in these cases, the administration of the bankruptcy system itself.

For the reasons stated above and for the reasons stated orally and recorded in open court, the Court finds and concludes that the Objection should be overruled. Accordingly, it is

**ORDERED** that:

1. The Objection is overruled as it relates to post-confirmation fees invoiced through April 30, 2012, by Steven S. Osch-er and Oscher Consulting, P.A. The services reflected in the Invoices comply with the requirements of 11 U.S.C. § 330 and are compensable.

2. Oscher is entitled to compensation of $246,885.45 as reflected in the Invoices. The firm shall credit the amount of any prior payments authorized in the Court's order entered as Doc. 675.

3. The Court will address the Objection as it relates to post-confirmation compensation and expense reimbursement invoiced by Stichter, Riedel, Blain & Prosser, P.A. (see Doc. No. 837) by separate order.

**DONE** and **ORDERED.**