**In re Richmond M. FLOWERS, Jr., Debtor.**

Bankruptcy No. 90–16199–BKC–AJC.

United States Bankruptcy Court, S.D. Florida.

Feb. 20, 1995.

Arthur S. Weitzner, Weitzner & Co., P.A., Miami, FL, for trustee.

Jeanette E. Tavormina, Trustee, Pembroke Pines, FL.

Ronald Neiwirth, Semet, Lickstein, Morgenstern & Berger, Coral Gables, FL, for debtor.

Peter B. Weintraub, Weintraub & Weintraub, P.A., Deerfield Beach, FL, for Lucia Flowers.

Steven Turner, Office of U.S. Trustee, Miami, FL.

*ORDER DETERMINING REASONABLE COMPENSATION FOR THE ATTORNEY FOR THE TRUSTEE*

A. JAY CRISTOL, Chief Justice.

THIS CAUSE came before the undersigned Bankruptcy Judge on Wednesday, November 30, 1994, for hearing on the pending application for compensation for the Attorney for the Chapter 7 Trustee, and the objections filed by the United States Trustee and a creditor, Lucia Flowers. The Court having received and reviewed the objections and comments on behalf of the United States Trustee and Lucia Flowers, and having further considered the argument of Trustee's counsel which is presented through this order, and the comments of another creditor, Brian Hersh, Esq., who is familiar with the legal problems confronting the estate, the Court makes the following findings of fact:

### THE CASE

The Debtor filed proceedings under Chapter 7 on September 5, 1990, and Jeanette E. Tavormina was appointed the Chapter 7 Trustee. By Order dated October 3, 1990, the Court authorized the employment of Arthur S. Weitzner of Weitzner & Co., P.A. as counsel for the Trustee on a general retainer.

Lucia Flowers is the principal creditor of this estate and is the former wife of the Debtor. Many of the problems confronting the Debtor and his former spouse were actively litigated before this Court.

The notice of the Trustee's Final Report was served on October 18, 1994. The Trustee's accounting discloses total receipts for this estate in the amount of $161,297.83, and total disbursements made in the amount of $60,316.38. The balance of funds in the possession of the Trustee is $100,981.45. The sizeable disbursements made in this case resulted from the payment to Lucia Flowers of property that was collected by the Trustee in which said creditor had a direct proprietary interest. This property consisted of certain former marital property and was realized through the administration of this estate.

The Debtor's schedules reflect total property in the amount of $415,159.19, however, the property claimed as exempt by the Debtor totalled $397,612.00. The scheduled nonexempt property was of minimal value and consisted of miscellaneous personal effects, such as clothing and jewelry, including a Superbowl ring scheduled in the amount of $7,000.00. (Formerly, the Debtor was a professional football player.)

The large recovery in this estate resulted from the disallowance of numerous exemptions, the largest of which was the interest in the Flowers Trading Company Pension Plan

and Trust which was scheduled in the amount of $109,000.00, and of which one-half of the recovery was paid to Lucia Flowers as her separate property.

The Trustee's accounting further indicates that most of the significant receipts from the non-exempt property were realized in December 1991. Subsequent to that date, additional property in the approximate amount of $20,000.00, excluding earned interest, was realized. These receipts resulted from litigation over a tax refund due the Debtor, and an adversary proceeding commenced against a former insider. Collection of these receipts were concluded in September 1993.

The Trustee was handicapped in finalizing the administration of this estate due to the failure of a tax attorney, who had been retained for the purpose of advising the Trustee of the tax consequences of administering the non-exempt property of the estate and to prepare appropriate tax returns, to perform any valuable services. Ultimately, the tax attorney was removed and a certified public accountant was employed. The accountant promptly prepared the estate tax returns thus enabling the Trustee to pay the taxes due. Other than the award of professional compensation, this estate has been fully administered.

### THE APPLICANT

Arthur S. Weitzner of Weitzner & Co., P.A. is an attorney at law who has been admitted to practice in the State of Florida since 1971. The attorney is a specialist in the area of insolvency and the attorney's practice is specialized in the area of insolvency. The attorney is admitted to practice before the United States District Court for the Southern District of Florida as a trial attorney, the United States Court of Appeal Eleventh Circuit, and the Supreme Court of the United States. Applicant is a certified business bankruptcy specialist. He holds the highest ratings available from the Martindale–Hubbell rating service and is generally regarded in the community as an expert in the field of insolvency.

### FEE REQUEST AND OBJECTIONS

Trustee's counsel is seeking total compensation in the amount of $25,000, plus reimbursement of costs in the amount of $782.56. The cost request is not in dispute and will be allowed in full. Counsel has not received any interim compensation. The applicant's request includes an enhancement to the lodestar of $4,420.00. The United States Trustee has recommended total compensation of no more than $18,080.00. The principal objections raised by the United States Trustee and the other creditor involve the following issues:

A. Whether the lodestar ought to be enhanced due to the delay in payment and contingency factors encountered at the inception of this proceeding.

B. Whether any Trustee's duties were included in the application.

C. Whether certain assets available for liquidation were not actively pursued by the attorney.

### SUMMARY OF THE ARGUMENTS

The applicant's arguments in support of his compensation request is summarized as follows:

The applicant is a specialist in Bankruptcy. The aggregate fee request in the amount of $25,000 equals less than 25% of the amount available for distribution, however said request equals only approximately 16% of the total recovery, all of which recovery benefited the objecting creditor Lucia Flowers. In light of the extensive time necessary to properly administer this case, the definite contingent factors involved in the early portion of the representation, and the delay in payment, Applicant's fee request is reasonable.

Concerning professional compensation 11 U.S.C. § 330 provides as follows:

(a) After notice *to any parties in interest and to the United States trustee* and a hearing, and subject to sections 326, 328, and 329 of this title, the court may award to a trustee, to an examiner, to a professional person employed under section 327 or 1103 of this title, or to the debtor's attorney—

(1) reasonable compensation for actual, necessary services rendered by such trustee, examiner, professional person, as the case may be, and by any paraprofessional persons employed by such trustee, professional person, or attorney as the case may be, based on the nature, the extent, and the value of such services, the time spent on such services, and the cost of comparable services other than in a case under this title; and

(2) reimbursement for actual, necessary expenses.

Counsel further points out that the United States Trustee's basis for objection is misplaced. The overall intent of Congress as is specifically enumerated in the legislative history to § 330 is to promote specialists in this field. Succinctly, the legislative history provides as follows:

"... Bankruptcy specialists, who enable the system to operate smoothly, efficiently, and expeditiously, would be driven elsewhere, and the bankruptcy field would be occupied by those who could not find other work ..."

Counsel argues that the current approach of the United States Trustee is driving established specialists from the field, and is virtually assuring that lay trustees will not be able to obtain competent representation.

At the hearing, the United States Trustee questioned why certain recent applications for compensation from this attorney have requested enhancements to the lodestar. Counsel responds that Local Administrative Rule 92–7, which went into effect in January 1993, and which is mandatory in regards to all applications for compensation, provides certain formal criteria for the filing of applications for compensation. This rule requires a cover sheet, a certification, itemized time records, and discussion of the twelve factors for consideration when awarding fees as enumerated in *Johnson v. Georgia Highway Express, Inc.* (and made applicable to bankruptcy proceedings in *In re First Colonial Corp. of America*).

A portion of the required certification includes the following statement:

"The fees and disbursements sought are billed at the rates in accordance with practices customarily employed by the applicant and generally accepted by the applicant's clients."

The applicant has recited his normal hourly rate of $200 per hour. This rate is somewhat lower than the rates charged by similarly qualified and experienced attorneys practicing in larger lawfirms where the going rate in the Miami area is apparently between $250 and $300 per hour. Applicant points out that his rate and the rates charged for the associate and legal assistant are representative of the rates charged in smaller lawfirms practicing commercial law. This hourly rate however, presumes monthly billing and payment from credit worthy clientele. This case presents a far different situation.

The initial stages of a Trustee representation in a Chapter 7 filing are generally somewhat of a blind item. Usually the cases are filed without any liquid assets, and as in this case, virtually all property is claimed as exempt. In this case, close examination of the property of the estate and the exemptions, analysis of the pre-petition transfers, resolution of these issues with the Debtor and his former spouse, thereafter, obtaining the property from third parties, and advising the Trustee of the appropriate method of distribution, required the expertise of a highly experienced and sophisticate attorney-at-law. The attorney-creditor who appeared at the hearing, Brian Hersh, corroborated that a lesser experienced attorney would have required far greater time in rendering these services if they could have been performed by a lesser experienced attorney at all. Applicant points out that in the Miami area matrimonial type litigation, which this case resembles, is normally handled on hourly rates with sizeable advance retainers.

The Eleventh Circuit recognizes that certain factors are necessary for the enhancement of the lodestar. See *In re Grant v. George Schumann Tire & Battery Co.,* 908 F.2d 874 (11th Cir.1990). This circuit recognizes that lodestar rates may be enhanced based upon risk of non-recovery, excellent or exceptional results or delay in receipt of payment. The *Grant* case specifically provides

that the applicant must demonstrate that enhancement is necessary to secure competent counsel. Applicant submits that in this case, the full showing has been made to support the requested enhancement. Applicant further submits that the enhancement is directed only at the first year's work that was rendered in a highly contingent type situation in which the skill and expertise of a competent attorney was most necessary. For these services, counsel has not been compensated to date. Meanwhile, the estate has received the benefit of the services, and has generated substantial interest receipts. As indicated by Mr. Hersh's comments, the services performed in this case required the services of highly competent counsel, and the results obtained are exceptional.

The alleged duplication of services with the associate attorney is either minimal or nonexistent. Applicant points out that many services where both counsel were involved have been eliminated from the application, and any remaining services that indicate both attorneys' time, necessarily were rendered by both attorneys. The notable time entry showing both attorney's time is for the Rule 2004 examination of the Debtor in which the myriad financial transactions of this Debtor were analyzed. For this entire case, the lower priced associate's time totalled (59.2 hours) $5,920, and resulted in a considerable economy generated for this estate. If any ministerial duties were performed, they were performed by a legal assistant at a yet lower rate of hourly compensation. Certain additional arguments by the United States Trustee are not in point. His contention that a contingency fee agreement was not approved is irrelevant. This matter deals with enhancement of the lodestar. His suggestion that this particular application for compensation should not have been processed through normal procedures and should have been specially noticed by the applicant, is without foundation in law or procedural rule.

Concerning the assertion by Lucia Flowers that certain property was not actively pursued by the Trustee, reference is drawn to the Brantley Kemp litigation. Counsel advised the Trustee that he had been informed by the Debtor that Brantely Kemp was un-

collectable. Nonetheless, due to repeated insistence of Lucia Flowers, an adversary proceeding was filed to avoid the transactions between the Debtor and Kemp. Concerning this adversary proceeding, services were kept to a bare minimum, a settlement for $5,000, including the issuance of a $4,500 promissory note to the estate, was approved. Only $500 of the settlement was actually received from Kemp who defaulted on the note, and upon demand served by Trustee's counsel, filed Chapter 7 Bankruptcy proceedings. Lucia Flower's contention that the Kemp litigation should have been more actively pursued through a greater expenditure of estate's resources is without merit. Applicant further points out that numerous telephone calls received from Lucia Flowers and the Debtor are not reflected in counsel's time records because they did not create any benefit to this estate and only served to render the administration of this estate more difficult and time consuming.

The United States Trustee's arguments are set forth as follows:

The United States Trustee filed an Objection Of United States Trustee On Fee Application By Weitzner & Co., P.A., Attorney For Chapter 7 Trustee, dated November 7, 1994 and a Supplement To Objection Of United States Trustee On Fee Application By Weitzner & Co., P.A., Attorneys For Trustee, dated November 28, 1994 (collectively, the "Objection") pursuant to the authority and responsibility of 28 U.S.C. § 586(a)(3)(A), 11 U.S.C. § 307, 11 U.S.C. § 330, and FRBP 2016.

One of the important responsibilities conferred upon the United States Trustee by Congress is "monitoring applications for compensation and reimbursement filed under section 330 of title 11 ...". 28 U.S.C. § 586(a)(3)(A). One of the purposes of enacting the United States Trustee Program was to supervise the administration of cases and to independently comment to the Court on fee applications and other matters before the Court.

The applicant seeks a "bonus" or "fee enhancement" of 50% on a portion of his hourly time, due to the results achieved and the delay and contingent nature of receiving pay-

ment. The applicant calculates this bonus or fee enhancement on the time expended up until settlements were received by the estate. With the bonus or fee enhancement, the applicant seeks compensation of $25,000.00. The requested bonus or fee enhancement is $4,420.00. Without the bonus/fee enhancement, the applicant seeks $20,580.00.

Section 330 of the Code does not specifically authorize fee bonuses, although the United States Trustee recognizes that in proper and rare circumstances the Court may award a bonus if the applicant has met his high evidentiary burden demonstrating that a bonus is appropriate. The United States Trustee notes that his experience in reviewing and monitoring fee applications indicates that they are rarely sought or awarded. The counsel for the United States Trustee is aware of only one instance in the past three and one-half years he has been actively before this Court and before the former Chief Judge that a bonus was awarded after *notice and hearing*. In fact, during the counsel for the United States Trustee's three and one-half years with the United States Trustee Program, he is aware of only two "bonuses" or "enhancements" having been discussed in open Court. One such bonus or fee enhancement was sought by the applicant in the chapter 7 case of *In re Aquasport, Inc.*, case number 88–02184–BKC–PGH. The United States Trustee filed an objection and set the objection and fee application for hearing. Judge Hyman denied the applicant a bonus. The applicant is presently appealing Judge Hyman's decision. A bonus was sought and awarded in a chapter 11 case in which the attorney for the unsecured creditors' committee achieved a 100% dividend for unsecured creditors and the Court determined that there were extraordinary results achieved which benefited the unsecured creditors.

The United States Trustee was not aware until recently of any other bonuses or fee enhancements having been sought by professionals in this District, however the applicant filed a response to the United States Trustee's objection to the applicant's bonus in the *Aquasport* case and cited two cases in which the Court had awarded him bonuses or fee enhancements—the cases *In re Eric Fernan-*

*dez*, case # 87–00365–BKC–PGH and *In re Cooper Oldsmobile, Inc.*, case # 90–11594–BKC–AJC. Both fee applications were considered and an award made without a hearing (notice was given of the total amount sought in the fee applications in the notice of final accounts, but no notation was made that a fee enhancement was sought). Apparently Judge Hyman, who was informed at the hearing on the objection to the *Aquasport* fee application that a bonus or fee enhancement had been awarded in the *Fernandez* case, *sua sponte* vacated the award of the bonus or fee enhancement, stating that "Hidden within the Application under Section 'F' is a request that the Applicant's fees be enhanced by 50% of the Applicant's normal hourly rates. Quite candidly, the court overlooked the request for enhancement and did not intend to award an enhanced fee to the Applicant." In the *Cooper Oldsmobile* case, the United States Trustee is considering whether he will file a motion with the Court to vacate the award of a bonus, enhancement, or contingency fee.

The United States Trustee opposes award of any bonus, fee enhancement or contingency award to the applicant. The United States Trustee believes the applicant has failed to meet the criteria established by the United States Supreme Court and the Eleventh Circuit Court of Appeals for awarding a "fee enhancement" or "bonus", and that the applicant has failed to meet his burden of proof that an enhancement is warranted or authorized in this case. *See, Pennsylvania v. Delaware Valley Citizens' Council For Clean Air*, 478 U.S. 546, 106 S.Ct. 3088, 92 L.Ed.2d 439 (1986) (hereinafter, *"Delaware I"*); *Pennsylvania v. Delaware Valley Citizens' Council For Clean Air*, 483 U.S. 711, 107 S.Ct. 3078, 97 L.Ed.2d 585 (1987) (hereinafter, *"Delaware II"*); *Grant v. George Schumann Tire & Battery Company*, 908 F.2d 874 (11th Cir.1990) (hereinafter *"Grant"*). The applicant alleges that the "contingency factors" he believes are present in this case warrant an enhancement over the lodestar amount. The applicant never obtained Court approval to handle the litigation on a contingent-fee arrangement. Almost all attorney representations before this Court have some contingencies built into them.

The argument of the applicant is not persuasive.

The applicant also alleges that the "delay in payment" of compensation to his firm is further justification for awarding him a fee enhancement. In the chapter 7 context, there is almost universally a delay in receiving payment, but the Courts have recognized that applicants are not entitled to interest and this is a risk they bear. On February 27, 1991 the trustee received $7,200 and on August 7, 1991 the trustee received $13,600. Thus, within 4½ months of the employment of the applicant, the estate had liquid funds on hand, and within 10 months of his employment there was sufficient funds to pay his entire fee without the bonus. Three years ago (December 9, 1991) the Trustee received the proceeds of the REFCO settlement in the amount of $109,252.19. The applicant could have applied for interim compensation pursuant to 11 U.S.C. § 331, but apparently the applicant choose not to exercise this right. As a result, any argument by the applicant that there was a delay in payment must be discounted because there were funds available in the estate within 4½ months of the applicant's employment (which is the earliest the applicant could have applied for compensation under § 331 of the Code), and there was a method for the applicant to receive compensation for services rendered through the date of such interim application. Because assets were received by the estate in a relatively short period of time, and the applicant could have applied for interim compensation immediately upon assets having been received by the estate, the arguments of the applicant that the "contingency nature" of the representation and the "delay factor" in receiving payment entitle him to a fee enhancement should be dismissed.

A review of the Trustee's Final Report Of Estate And Proposed Dividends (the "TFR") indicates the last funds received by the trustee (other than interest) was $1,500 over one year ago (November 8, 1993) and that it was over 9½ months until the TFR was filed. Thus, part of the delay in the applicant's receipt of compensation is a result of the delay in closing this estate caused by the inaction of the trustee or the applicant, or both.

There is nothing unusual in this case to warrant awarding a bonus. The United States Trustee submits that an attorney for a trustee is expected to fully represent his client and to attempt to achieve results, namely bring money into the estate for payment to general creditors. The applicant did nothing more than would be expected from competent counsel for a trustee. *See, e.g., Delaware I,* 478 U.S. at 566–68, 106 S.Ct. at 3099, 92 L.Ed.2d at 457. The applicant has not demonstrated that third party clients would have agreed or would pay an enhancement or bonus when the retention was made on a general retainer.

The Supreme Court has consistently held that bonuses and fee enhancements should only be awarded in exceptional cases where the results are exceptional and not adequately compensated by the applicant's hourly rate. The results in this case, although beneficial, do not rise to the high standard necessary to consider awarding a bonus, enhancement, or contingency fee. The applicant was merely performing his professional duty to the estate and trustee, which is what he was hired and expected to do. The results achieved in this case are what would be expected from a professional with the qualifications of the applicant.

The United States Court of Appeals for the Ninth Circuit, in the case of *In re Manoa Finance Co., Inc.,* 853 F.2d 687 (9th Cir. 1988), held that "compensation awards under § 330 may be enhanced only in exceptional circumstances where the applicant produces specific evidence that an award based on his standard hourly rate and actual hours worked does not fairly compensate for the work done". 853 F.2d at 688. The Court continued:

"We also emphasize that under these general principals, enhancements based on results achieved, which is what the appellant requested, will rarely be available. A compensation award based on a reasonable hourly rate multiplied by the number of hours actually and reasonably expended is presumptively a reasonable fee.... In addition, the following four *Kerr* factors

are now considered subsumed within the lodestar and cannot serve as independent bases for an upward adjustment: (1) the novelty and complexity of the issues, (2) the special skill and experience of counsel, (3) the quality of representation, and (4) the results obtained. *Delaware I*, 478 U.S. at 565, 106 S.Ct. at 3098; *Miller v. Los Angeles County Bd. of Educ.*, 827 F.2d 617, 620–21 n. 4 (9th Cir.1987). Because these factors ordinarily are accounted for in either the hourly rate or the number of hours expended, they can support an upward adjustment only when it is shown by specific evidence that they are not fully reflected in the lodestar. *See Delaware I*, 478 U.S. at 564–69, 106 S.Ct. at 3098–3100; *Blum v. Stetson*, 465 U.S. 886, 898–900, 104 S.Ct. 1541, 1548–49, 79 L.Ed.2d 891." [1] The Ninth Circuit notes that a Court, in evaluating any evidence presented by an applicant for a fee enhancement, must consider the United States Supreme Court admonition that:

> "[W]hen an attorney first accepts a case and agrees to represent the client, he obligates himself to perform to the best of his ability and to produce the best possible results commensurate with his skill and his client's interests. Calculating the fee award in a manner that accounts for these factors, either in determining the reasonable number of hours expended on the litigation or in setting the reasonable hourly rate, thus adequately compensates the attorney, and leaves very little room for enhancing the award based on his post-engagement performance." [2]

The United States Trustee does not believe the applicant has met his burden of proof that a fee enhancement or bonus is permitted or appropriate in this case. *See, Delaware II*, 483 U.S. at 728 and 730–31, 107 S.Ct. at 3088 and 3089, 97 L.Ed.2d at 599 and 601; *Delaware I*, 478 U.S. at 564–65, 106 S.Ct. at 3098, 92 L.Ed.2d at 456; and *Grant*, 908 F.2d at 880.

The United States Trustee also directed the Court's attention to the cases cited in *Manoa: In re Terex Corp.*, 70 B.R. 996, 1003 (Bkrtcy.N.D.Ohio 1987) which denied a bonus and noted that attorneys in private practice do not bill their clients for a lump sum bonus based upon good results achieved; *In re Schaeffer*, 71 B.R. 559, 562–63 (Bkrtcy. S.D.Ohio 1987) which held that although the results of litigation were both commendable and hard-won, there was no evidence to justify a premium; *In re Kero–Sun, Inc.*, 59 B.R. 630, 634 (Bkrtcy.D.Conn.1986) which denied an upward adjustment which was requested on the basis of several factors, including results achieved, because all were included in the lodestar.

The applicant cites the case of *Grant* for the proposition that a bonus is appropriate in this case. Although the Court stated that "lodestar rates may be enhanced based on risk of non-recovery, excellent or exceptional results, or delay in receipt of payment" (*Id.* at 880), the Court in that case denied the applicant a bonus, finding that it was not appropriate in that case. A review of the opinion indicates that the 11th Circuit recognizes that it is only in exceptional cases that a fee enhancement would be awarded and that the claimant has the duty to provide specific evidence that "the quality of representation was superior to that which one would reasonably expect in light of the rules claimed." *Id.* The 11th Circuit appears to have been focusing on not only the risk of non-recovery, but proof by the applicant that "such enhancement is necessary to assure the availability of counsel." *Id.*, quoting *Norman v. Housing Authority of City of Montgomery*, 836 F.2d 1292, 1302 (11th Cir. 1988). The applicant in this case has not demonstrated that a fee enhancement was necessary in order for the trustee to engage counsel to handle this case or the litigation which resulted in the settlement. The 11th

---

1. The reference to *Kerr* is to the case of *Kerr v. Screen Extras Guild*, 526 F.2d 67 (9th Cir.1975), *cert. denied*, 425 U.S. 951, 96 S.Ct. 1726, 48 L.Ed.2d 195 (1976). The factors set forth in *Kerr* appear to be identical or similar to the factors set forth in *In re First Colonial Corp. of America*, 544 F.2d 1291 (5th Cir.1977). The reference to the Supreme Court case of *Delaware I* is to the case

of *Pennsylvania v. Delaware Valley Citizens' Council for Clean Air*, 478 U.S. 546, 564–66, 106 S.Ct. 3088, 3098, 92 L.Ed.2d 439 (1986).

2. *In re Manoa Finance Co., Inc.*, 853 F.2d at 692, citing *Delaware I*, 478 U.S. at 564–66, 106 S.Ct. at 3098.

Circuit in the *Grant* case refused to award the fee enhancement, in part, based upon the attorney's failure to demonstrate the requested fee enhancement was necessary in order to insure availability of counsel. Finally, with respect to a delay in payment, the 11th Circuit noted that the estate in *Grant*, although having no funds at the time counsel was employed by the estate, received funds within seven months and the priority scheme of 11 U.S.C. § 507 guaranteed some payment to the counsel upon receipt of estate funds (from whatever source). *Id.* In this case funds were received by the estate within 4½ months of the applicant's employment, and within 10 months there were sufficient funds to fully pay his fee.

Even if a bonus were appropriate in this case, the United States Trustee suggests the requested 50% enhancement of a portion of the billed time would be excessive and exceeds the reasonable "cap"/general rule suggested by the United States Supreme Court. *Delaware II*, 483 U.S. at 730–31, 107 S.Ct. at 3089, 97 L.Ed.2d at 601.

The applicant argues that the "current approach of the United States Trustee is driving established specialists from the [bankruptcy] field, and is virtually assuring that lay trustees will not be able to obtain competent representation." The United States Trustee suggests the applicant has failed to demonstrate by any evidence that specialists are abandoning the bankruptcy field, and in fact suggests that the bankruptcy specialists are increasing. The applicant has failed to demonstrate that it is becoming difficult or impossible for panel trustees to employ competent counsel to represent them in proceedings before this Court. The United States Trustee, who is charged by Congress with reviewing each fee application filed in a chapter 7 and 11 case, is aware of numerous counsel willing to represent chapter 7 trustees and who are willing to assume the risk that no funds will be available for payment of fees if the attorney is unsuccessful. These professionals are employed on a lodestar basis and apply only for the lodestar amount, even when they are extremely successful in recovering funds for the estate which result in significant dividends to unsecured creditors.

The United States Trustee, in filing the Objection, was fulfilling its statutory duty set forth in 28 U.S.C. § 586 in reviewing applications for compensation and objecting where it deems necessary. In this case, the United States Trustee could ascertain no "special" factors or a satisfaction of the Supreme Court or Eleventh Circuit criteria for awarding a fee enhancement. Quite the contrary, this case resembles other chapter 7 cases where counsel has assisted the chapter 7 trustee in recovering assets for the benefit of creditors and *no* bonus or fee enhancement was sought. Counsel for the United States Trustee indicates that the applicant is the only chapter 7 professional he is aware of which has sought a bonus or fee enhancement. The applicant has represented the chapter 7 trustee in this case for several years in other chapter 7 proceedings, on a lodestar basis only, and yet it appears that the applicant has only recently decided that fee enhancements are proper or appropriate. In the past eleven months, the applicant has requested fee enhancements in at least four chapter 7 cases and appears to believe that the routine enhancement of fees is justified.

The hourly rate charged by the applicant ($200.00 per hour) is what the applicant charges on all chapter 7 trustee representations, even in cases where the applicant served as trustee. This hourly rate is generally in line (in some instances higher) with what counsel charge chapter 7 trustees in cases of this size and complexity. The applicant established this rate and if he believes his hourly rate is lower than what the "market" will accept for someone with his experience, he should consider whether it would be appropriate to prospectively adjust such rate for future representations. At the time the applicant accepted the employment by the trustee, the applicant had the opportunity to review the debtor's petition and should have been aware of the contingent nature of payment of any fee, if any, due to the then lack of liquidated funds in the estate. However, in this case the applicant agreed that $200 an hour was his normal hourly rate and the applicant should be bound by such rate. If

the bonus were awarded to the applicant for the requested time up to the settlement, the applicant would effectively be receiving an hourly rate of $300.00 for such time. The United States Trustee suggests this is excessive for a chapter 7 case similar to this case. The $250 to $300 hour rates cited by the applicant are at the higher end of billing rates in the Southern District of Florida and are generally charged by larger law firms in extremely large chapter 7 cases and chapter 11 cases. A fee in such range is not standard or appropriate in this case.

The United States Trustee also believes that the fee sought by the applicant, without the fee enhancement, is excessive. More specifically, the United States Trustee notes the time entries for 10/26/90 in which the applicant's associate bills 4.0 hours for assisting in a Rule 2004 examination ($400.00), when the lead attorney bills 3.5 hours for the same 2004 exam ($700.00), thus resulting in duplication of services; the associate bills 2.0 hours on 6/12/91 for the ministerial task of organizing bankruptcy files and debtor's records and assisted the lead attorney in preparation of a demand letter ($200.00); the applicant's paralegal bills 2.0 hours on 3/17/92 for the ministerial tasks of preparing 2 subpoenas and setting up a Rule 2004 examination ($120.00); the applicant's paralegal bills 2.0 hours on 7/9/91 for a trustee duty of attending a sale and preparing 2 bills of sale and drafting the report of sale ($120.00); the applicant's paralegal bills 1.25 hours on 6/5/92 for a trustee duty of drafting a motion to employ an auctioneer and notice of sale ($75.00); the applicant's paralegal bills 1.20 hours on 7/21/92 in part for drafting a report of sale and a telephone call to the auctioneer (the trustee duty, $72.00); the applicant's paralegal charges 1.35 hours on 7/14/92 for organizing records for transmittal to special counsel ($81.00) and on 3/15/94 bills the estate 1.10 hours for organizing the estate records for transmittal to the accountant ($66.00); the lead counsel charging 2.5 hours on 2/17/94 to prepare a motion to employ a CPA and review of the entire matter and court file—this is a trustee duty and utilizes standard forms promulgated by the Court ($500.00); the applicant's paralegal charging 1 hour on 9/28/90 for the trustee duty or ministerial task of drafting a motion and order to retain the applicant and set up the file for further administration ($60.00); and on 9/11/91 expending 1 hour by the applicant's paralegal for the trustee duty of drafting a motion to employ special counsel ($60.00).

The United States Trustee has suggested to the Court that the fee enhancement in the amount of $4,420.00 be denied, and the fee be further reduced by $2,500.00 for trustee duties or ministerial duties performed by the applicant, for a total award not to exceed $18,080.00.

Lucia Flowers arguments are set forth as follows:

### Lucia Flowers' Objection to Fee Application
### by Attorney for Trustee

Creditor, LUCIA FLOWERS, adopts the Objection of United States Trustee on Fee Application by Weitzner & Co., P.A., Attorneys for Trustee and the Supplement thereto as well as the Objections by the United States Trustee set forth within this Order and incorporates same within this Creditor's objections.

In addition to the Objections set forth by the United States Trustee, this Creditor would cite several instances and factors as mitigating against the fee requested by Trustee's attorneys and, more specifically, any enhancement, bonus or contingency in connection with said fee. The factors include, without limitation, the following:

a. *Excessive Delay.* This Chapter 7 proceeding commenced in 1990. As evidenced by the Cash Receipts and Disbursement Records prepared by or on behalf of the Trustee in this action, nearly 97% of the funds available for distribution in this Estate ($95,829.52 out of $101,702.19) were deposited *on or before July 27, 1993.* Subsequent to that date, excluding interest on the aforementioned account balance, the Trustee only secured an additional $4,500.00 which is now available for distribution. Neither the Trustee nor her attorney, the Applicant herein, have offered a suitable explanation or justification for the delay in the final administration of the case.

Likewise, Trustee's counsel has failed to offer an explanation for the failure to request an earlier termination of this matter and disbursement to creditors. In fact, the Cash Receipt Record reflects the Preliminary Final Report (filed for the period ending September 30, 1993) was prepared for filing on or about February 1, 1994. No explanation has been offered or tendered by the Trustee or her counsel to justify a nine-month delay from the filing of the Preliminary Final Report to the closing of this matter.

One likely explanation for this unwarranted delay appears to involve this Applicant's failure to monitor and pursue prompt tax return preparation by Perry Itkin, Esquire, Special Counsel for the Trustee. According to the records in the possession of this Creditor, Mr. Itkin was retained as Special Counsel on October 1, 1991. On February 10, 1994, (nearly two and one-half years later) Trustee's Counsel filed a Motion to Terminate Mr. Itkin's relationship as Special Counsel and sought to retain the services of an accounting firm to prepare necessary tax forms. No suitable explanation was proffered by Trustee or her counsel to explain Mr. Itkin's non-performance or the delay in seeking the removal of Mr. Itkin. During the interim period, this Creditor and the remaining creditors were required to wait for this Applicant to take the necessary steps to finish this case. This level of conduct does not warrant any enhanced legal fee. To the contrary, if this Court is to consider an enhancement for "good results," than by the same standard, a penalty ought to be applied for unjustified "bad results."

b. *Brantley Kemp.* This aspect of the case involves an Adversary Proceeding filed by this Applicant on the Trustee's behalf against Brantley Kemp. Stated briefly, on the day prior to Debtor's initial filing, the Debtor fraudulently conveyed and transferred $2,500.00, in the form of a loan, to permit Mr. Kemp to purchase certain assets previously owned or controlled by the Debtor, Richmond Flowers. Within two weeks following the transfer, Mr. Kemp sold 10% of the subject assets for $25,000.00. Simple computation supports an overall value for the subject assets of $250,000.

According to this Creditor, the Trustee and this Applicant failed to adequately pursue this fraudulent conveyance since: a) this Applicant never determined or confirmed that the Debtor did not retain any interest in the conveyed assets; b) Debtor never received any further consideration as a result of the subsequent sale of the 10% interest in the conveyed goods; c) never determined, raced or pursued a return of the remaining assets which were the subject of the fraudulent conveyance; d) agreed to settle all claims against Mr. Kemp in exchange for the execution of an unsecured $5,000.00 promissory note; e) failed to pursue Mr. Kemp upon the filing of a Chapter 7 case on his behalf in order to obtain a non-dischargeability judgment/order; f) allowed nearly one year to pass following the delivery of the note by Mr. Kemp prior to commencing collection activities; and, g) received a grand total of $500.00 on a claim whose potential value exceeded $250,000.00, in the opinion of Lucia Flowers. Additionally, this Applicant seeks $1,289.00 as compensation for this particular aspect of this case.

c. *Excessive Hours in Light of Case Administration.* Lucia Flowers has suggested since the inception of this case that this matter represented a "bad faith" filing by the Debtor to avoid or delay his payment of debt to her as his former wife. Lucia Flowers personally incurred in excess of $40,000 in attorneys' fees regarding the Debtor and this action. Lucia Flowers and her attorneys cooperated with this Applicant and provided information which facilitated this Applicant's efforts.

The applicant, through its several categories of billing personnel, has billed excessive amounts based upon the results obtained and reasonable time requirements (regardless of results):

| | |
|---|---|
| 2004 exam of Debtor | 7.5 hours |
| Objection to exemptions | 3.7 hours |
| Organize file | 2.0 hours |
| Prepare fee application | 9.0 hours. |

Due to time constraints and for the sake of brevity, this Creditor is limiting the nature and volume of her objections to this fee application. This Applicant never disclosed his intention to seek a contingency fee or fee

enhancement in his original Motion for Appointment. Such disclosure, at that time, may have led to an objection by this Creditor and others prior to the rendition of services by this Applicant. This Applicant has not proffered a Fee Agreement with the Trustee containing a fee enhancement provision or other bonus incentive. No extraordinary results were present in this matter to warrant a fee enhancement in this action.

In consideration of the foregoing arguments and factors for determination of compensation, it is

ORDERED that:

Arthur S. Weitzner, Weitzner & Co., P.A., Attorney for the Trustee, is allowed a fee of $24,480.00 and $ 782.56 for expenses.

In allowing the foregoing fees, the Court has considered each of the factors that govern the reasonableness of fees as set forth in *Matter of First Colonial Corp. of America,* 544 F.2d 1291 (5 Cir.1977).